

Minute Order: Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6569 | **DATE** | 2/13/2003 |
| **CASE TITLE** | Davis, et al. v. GN Mortgage Corp., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendants' motions for summary judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] The motions for summary judgment filed by both Defendants, GN, (see GN Mot. for Summ. J. [docket entry 40-1]) and Countrywide (see Countrywide Mot. for Summ. J. [docket entry 45-1]), are granted. See attached.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | FEB 1 8 2003 | |
| | Notified counsel by telephone. | | date docketed | 61 |
| X | Docketing to mail notices. | | AR | |
| X | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Thomas P. Davis and )
Cathy M. Davis )
    Plaintiffs, )
)
v. ) No. 01 C 6569
)
G N Mortgage Corp. and )
Countrywide Home Loans, Inc. )
    Defendants. )

## OPINION AND ORDER

CHARLES R. NORGLE, SR. District Judge

Before the court are Defendants' motions for summary judgment on Plaintiffs' claims, brought pursuant to Federal Rule of Civil Procedure 56. For the following reasons, both motions are granted.

## BACKGROUND[1]

Plaintiffs, Thomas and Cathy Davis, ("Davises"), filed this diversity suit alleging that they were improperly charged a prepayment penalty fee. The Davises were charged the prepayment penalty fee as a result of paying off their mortgage, prior to the expiration of the prepayment penalty period, and refinancing with another lender. The Davises executed their original mortgage loan agreement with G N Mortgage Corp., ("GN"). GN later sold the loan and assigned its rights under the loan to Countrywide Home Loan, Inc., ("Countrywide"). The Davises have asserted claims against both GN and Countrywide.

On September 9, 1999, the Davises obtained a $288,000 adjustable rate mortgage loan from

---

[1] The court takes the facts from the parties' Local Rule 56.1 statements and accompanying briefs. Disputed facts are noted in the text.

GN in order to purchase a house. During the closing of their loan, the Davises signed and received a number of documents, including, *inter alia*: an adjustable rate note, a mortgage, an adjustable rate rider to the mortgage, a five-year prepayment penalty note addendum to the mortgage, a document entitled "Alternative Mortgage Transaction Parity Act Disclosure," and a document entitled "Notice of Right to Cancel." Aside from the Davises, the only other party present during the closing was Patricia Bogdanovich, ("Bogdanovich"), the closing agent for TICOR Title Insurance Co., the title company to the transaction. Bogdanovich presented the Davises with two sets of documents: one set to be signed and another set of unsigned documents for the Davises' records.

The parties completed the closing of the loan, and the Davises did not opt to cancel their loan within the three-day period provided by the document entitled "Notice of Right to Cancel." In early 2000, GN sold the loan and assigned its rights under the loan to Countrywide. In mid-2001, the Davises requested that Countrywide provide the amount required to pay off the loan as of the two-year anniversary of the loan, September 2, 2001. Countrywide told the Davises that a prepayment penalty of approximately $12,000 would be imposed if the loan was paid off within 5 years, in accordance with the five-year prepayment penalty agreement that they signed.

On August 23, 2001, the Davises filed a complaint against GN and Countrywide seeking declaratory relief. The relief then sought was a declaration that the parties' agreement either contained no prepayment penalty or a two-year prepayment penalty. Before the matter could be adjudicated, the Davises refinanced their loan. On February 20, 2002, the Davises refinanced the GN / Countrywide loan with a loan from another lender at a lesser interest rate. Based on this change in circumstances, on April 2, 2002, the Davises filed a motion for leave to file an amended complaint. The court took the matter under advisement, requesting that the Davises produce

documentation supporting their proposed amended complaint. (See Minute Order of April 12, 2002 [docket entry 25-1]). The Davises responded by producing the declaration of Thomas Davis, and renewed their motion for leave to file an amended complaint. After addressing certain jurisdictional deficiencies in the amended complaint, the court granted the Davises 10 days to file a second amended complaint. (See Minute Order of May 23, 2002 [docket entry 30-1] (finding that the Davises' amended complaint failed to properly plead diversity jurisdiction; granting 10 days to file a second amended complaint)). The Davises complied with the court's order and filed a second amended complaint. Specifically, the Davises' second amended complaint contains four counts: Count I, that GN and Countrywide violated the Illinois Interest Act, 815 Ill. Comp. Stat. 205/1 *et seq.*, by providing for and imposing an prepayment penalty without an effective agreement; Count II, that Countrywide breached the parties' agreement by imposing a five-year prepayment penalty agreement; Count III, that GN violated the Illinois Consumer Fraud Act, 815 Ill. Comp. Stat. 505/2 *et seq.*, by causing the Davises to sign inconsistent prepayment penalty riders; and Count IV, that GN committed common law fraud by misrepresenting the terms of the Davises' mortgage loan and causing the Davises to sign inconsistent prepayment penalty riders.

The Davises' claims for relief in this case center around the prepayment penalty. It is uncontested that a five-year prepayment penalty rider was signed by Thomas and Cathy Davis. However, the Davises contend that they negotiated with GN prior to the closing in regard to the prepayment penalty. According to the Davises, GN initially proposed that the loan would be subject to a three-year prepayment penalty, and that the Davises rejected this proposal. They contend that their mortgage broker informed them that GN had agreed to a two-year prepayment penalty. They further contend that Bogdanovich represented to them that the documents that they signed were

identical to the set of unsigned documents that they received. The Davises have indicated that their copies of the closing documents contain two unsigned prepayment penalties, one for a five-year prepayment penalty and another for a two-year prepayment penalty. In short, the Davises allege that the five-year prepayment penalty rider, which they individually signed, was procured by fraud, due to the existence of the two-year prepayment penalty rider that was also among the documents they received.

In contrast, GN and Countrywide contend that the only prepayment penalty that was signed by the Davises was one for a five-year period, and that this is the only such document relating to a prepayment penalty that is in the Davises' file. Both GN and Countrywide responded by filing separate motions for summary judgment, (see GN Mot. for Summ. J. [docket entry 40-1] and Countrywide Mot. for Summ. J. [docket entry 45-1]), which the court now addresses.

## STANDARD OF DECISION

Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The nonmoving party cannot rest on the pleadings alone, but must identify specific facts, see Cornfield v. Consol. High School Dist. No. 230, 991 F.2d 1316, 1320 (7th Cir. 1993), that raise more than a scintilla of evidence to show a genuine triable issue of material fact. See Murphy v. ITT Technical Services, Inc., 176 F.3d 934, 936 (7th Cir. 1999). Neither "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), nor "the mere existence of some alleged factual dispute between the parties," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986), will preclude a motion for summary judgment. "The days are gone, if they ever existed, when the nonmoving party could sit back and simply poke holes in the moving

4

party's summary judgment motion." Fitzpatrick v. Catholic Bishop of Chicago, 916 F.2d 1254, 1256 (7th Cir. 1990).

A defendant is entitled to put the plaintiff to his proofs and demand a showing of the evidence. See e.g., Navarro v. Fuji Heavy Industries, Ltd., 117 F.3d 1027, 1030 (7th Cir. 1997). If the plaintiff fails to come up with the required proof, the defendant is entitled to summary judgment. See id. The plaintiff must produce evidence, rather than speculation and conclusions without factual support. See Rand v. CF Industries, Inc., 42 F.3d 1139, 1146-47 (7th Cir. 1994). "Conclusory allegations and self-serving affidavits, if not supported by the record, will not preclude summary judgment." Logan v. Caterpillar, Inc., 246 F.3d 912, 923 (7th Cir. 2001) (citing Haywood v. N. Am. Van Lines, Inc., 121 F.3d 1066, 1071 (7th Cir.1997); Slowiak v. Land O'Lakes, Inc., 987 F.2d 1293, 1295 (7th Cir.1993)).

The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. See Fed. R. Civ. P. 56(c). "In the light most favorable" simply means that summary judgment is not appropriate if the court must make a "choice of inferences." See Wolf v. Buss (America) Inc., 77 F.3d 914, 922 (7th Cir. 1996). The choice between reasonable inferences from facts is a jury function. See Anderson, 477 U.S. at 255.

## DISCUSSION

### A. Illinois Interest Act and Common Law Fraud:

The Davises' arguments to this court require consideration of the parol evidence rule. The Davises contend that the fraud exception to the parol evidence rule applies to their situation, arguing that the executed five-year prepayment penalty was procured by fraud, as they believed that they were executing a two-year prepayment penalty because their copies of the closing documents contain

5

both an unsigned five-year prepayment penalty and an unsigned two-year prepayment penalty. The Davises' fraud argument serves two purposes within their complaint: first, it is used in Count I of their complaint to allege that the five-year prepayment penalty was not a binding agreement, and that a two-year prepayment penalty was intended; thus the contract as reformed evidences a violation of the Illinois Interest Act on behalf of both defendants, GN and Countrywide; and second, it is a separate claim for relief under count IV of their complaint, which alleges common law fraud, brought against GN.

A bedrock principle of contract law is *pacta sunt servanda*, which translates from Latin as "agreements must be kept." In keeping with this principle, the parol evidence rule seeks to assure that a writing, intended to be a final expression of agreement between the parties to a contract, is not to be changed by the admission of evidence that adds to, modifies, or contradicts that agreement as written. See generally, John D. Calamari & Joseph M. Perillo, The Law of Contracts § 3.2 (4th ed. 1998). The parol evidence rule is "designed to permit a party to a written contract to protect himself against perjury, infirmity of memory, or the death of witnesses." 30 Am. Jur. 2d Evidence § 1016 (1967).

The parol evidence rule, as with other legal formalities, serves a number of functions. Legal formalities serve three basic functions: the evidentiary function, the cautionary function, and the channeling function. See Lon L. Fuller, Consideration and Form, 41 Colum. L. Rev. 799, 800-04 (1941). In looking at the purpose and effect of the parol evidence rule, the evidentiary function is served by ensuring an objective memorial of the parties' agreement, the cautionary function is served by impressing the parties with the significance of their acts and their resultant obligations, and the channeling function is served by allowing a court to efficiently look in one

place to find the parties' agreement.

Illinois courts have embraced the parol evidence rule in its more conservative approach, which has been termed the "four corners" rule. See e.g., Air Safety, Inc. v. Teachers Realty Corp., 706 N.E.2d 882, 884 (Ill. 1999). The Illinois Supreme Court has stated: "'An agreement, when reduced to writing, must be presumed to speak the intention of the parties who signed it. It speaks for itself, and the intention with which it was executed must be determined from the language used. It is not to be changed by extrinsic evidence.'" Id. (citing Western Illinois Oil Co. v. Thompson, 186 N.E.2d 285, 291 (Ill. 1962)).

This conservative approach to the parol evidence rule is tempered by a few exceptions. "An exception to the parol evidence rule provides that extrinsic evidence of the parties' intentions may be introduced to prove mutual mistake, conditional delivery, a lack of consideration or fraud." O'Brien v. Cacciatore, 591 N.E.2d 1384, 1390 (Ill. App. 1st Dist. 1992) (citing Main Bank of Chicago v. Baker, 410 N.E.2d 681, 686 (Ill. App. 1st Dist. 1980)). Further, this fraud exception to the parol evidence rule must be established by clear and convincing evidence. See e.g., Turzynski v. Libert, 259 N.E.2d 295, 299 (Ill.App.1st Dist. 1970). In Turzynski, the court reiterated Illinois' well-established policy on this matter, stating:

> The presumption very properly is that all men are honest. Where fraud is charged it must affirmatively be proved by clear and convincing testimony. It cannot be established upon mere suspicion. The burden is upon the one alleging fraud to prove it by such clear and convincing evidence that the mind is well satisfied that the charge is true.

Id. (citations omitted) (collecting authority).

Under Illinois law, the elements of a cause of action for common-law fraud are: (1) a false statement of material fact; (2) known or believed to be false by the party making it; (3) an intent to

7

induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party as a result of the reliance. See e.g., Soules v. General Motors Corp., 402 N.E.2d 599, 601 (Ill. 1980). More specifically in regard to the present case, under Illinois law, there are two categories of fraud: fraud in the execution and fraud in the inducement. See e.g., Belleville National Bank v. Rose, 456 N.E.2d 281, 283 (Ill. App. 5th Dist. 1983). "Fraud in the execution of an instrument is practiced 'where the instrument is misread to the party signing it, or where there is a surreptitious substitution of one paper for another, or where by some other trick or device a party is made to sign an instrument which he did not intend to execute.'" Id. (citing Turzynski v. Libert, 259 N.E.2d 295, 298 (Ill. App. 1st Dist. 1970)). "Fraud in the inducement, on the other hand, exists where 'the party fully understands what he is signing, and is aware of the nature and character of the instrument executed by him, but is deceived by fraudulent representations as to the facts outside the instrument itself.'" Id. (citing Papke v. The G.Il. Hammond Co., 61 N.E. 910, 912 (Ill. 1901)). The Davises' argument is one based on fraud in the execution.

However, "[t]he defense of fraud is, in most situations, unavailable to avoid the effect of the written agreement where the complaining party could have discovered the fraud by reading the instrument, and was in fact afforded a full opportunity to do so." Id. at 284. In Leon v. Max E. Miller and Sons, Inc., 320 N.E.2d 256, 260 (Ill. App. 1st Dist. 1974), the court stated:

> One is under a duty to learn, or know, the contents of a written contract before he signs it, and is under a duty to determine the obligations which he undertakes by the execution of a written agreement. [citation omitted]. And the law is that a party who signs an instrument relying upon representations as to its contents when he has had an opportunity to ascertain the truth by reading the instrument and has not availed himself of the opportunity, cannot be heard to say that he was deceived by misrepresentations. [citation omitted].

This requirement precedent to alleging a defense of fraud to the parol evidence rule has been referred

8

to as the "due diligence rule." See Kolson v. Vembu, 869 F. Supp. 1315, 1322 (N.D. Ill. 1994) (collecting authority) ("Illinois courts have consistently refused to extend the doctrine of fraudulent inducement to vitiate contracts where the complaining party could have discovered the fraud by reading the instrument and had the opportunity to do so."). The failure of a plaintiff to comply with the "due diligence rule" vitiates any argument that it has satisfied the reliance element of a fraud claim. In this case, it is the "due diligence rule" that militates that summary judgment be granted against the Davises.

The Davises contend that the executed five-year prepayment penalty was procured by fraud, as they believed that they were executing a two-year prepayment penalty because their copies of the closing documents contain both an unsigned five-year prepayment penalty and an unsigned two-year prepayment penalty. Specifically, the Davises contend that their mortgage broker informed them that GN had agreed to a two-year prepayment penalty and that Bogdanovich represented to them that the documents that were signed were identical to the set of documents that they received, and contained a two-year prepayment penalty. In addition, the Davises contend that a statement made by GN's counsel constitutes a judicial admission, which creates a genuine issue of material fact as to whether a two-year prepayment penalty was executed.

Initially, it must be noted that the statement attributed to the Davises' mortgage broker is inadmissible hearsay, see Fed. R. Evid. 805, and will not be considered for purposes of the summary judgment motions. See Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996) (noting that in deciding a motion for summary judgment, the court can only consider evidence that would be admissible at trial under the Federal Rules of Evidence).

Secondly, the representations attributed to Bogdanovich are used to attempt to establish fraud

in the execution of the prepayment penalty. Yet, the "due diligence rule" vitiates any argument that the Davises satisifed the reliance element of their fraud claim. The Davises had an opportunity to review the documents that they were executing, both during and after the closing. Impressed with the nature of the agreement that they were entering, the Davises could have read the documents that they were signing. However, despite the importance now asserted to have been attached to the prepayment penalty, the Davises failed to assure themselves that the agreement reflected their expectations. In his declaration, Thomas Davis indicated: "The two sets of documents appeared to be the same, though we did not compare them line by line." (Davis Second Am. Compl., Ex. GG - Davis Decl. ¶ 10). The Davises also could have reviewed the documents that they received after the closing, and attempted to clarify any ambiguities. If the Davises were unsatisfied with any ambiguities that remained unclarified, they could have rescinded the contract within three days, but they failed to do so. As aptly stated by the court in Leon, 320 N.E.2d at 260: "[T]he law is that a party who signs an instrument relying upon representations as to its contents when he has had an opportunity to ascertain the truth by reading the instrument and has not availed himself of the opportunity, cannot be heard to say that he was deceived by misrepresentations."

Thirdly, the Davises also attempt to create a genuine issue of material fact as to their allegation of fraud by indicating that GN's counsel made a judicial admission by stating to the court during a status hearing: "There is a blank two-year prepayment penalty document in the file." (See Davis 56.1 Statement, Ex. G - Tr. of April 12, 2002 Status Hr'g). However, GN's counsel withdrew this statement during the next status hearing, indicating to the court and the Davises that the statement had been a misstatement. Furthermore, in light of the context of the status hearing at which the statement was uttered, such a statement does not constitute a judicial admission. See

Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 170 (1972).

Thus, the only "evidence" that the Davises proffer in support of their fraud theory is their own self-serving affidavit, which is unsupported by any evidence in the record. The affidavit does nothing to demonstrate that GN and Countrywide are not entitled to summary judgment. See Logan, 246 F.3d at 923 ("Conclusory allegations and self-serving affidavits, if not supported by the record, will not preclude summary judgment.").

The Davises have failed to establish, by clear and convincing evidence, that the fraud exception to the parol evidence rule applies to their situation. Thus, the only valid contract between the parties is the signed five-year prepayment penalty. Likewise, since the Davises have failed to establish that the fraud exception to the parol evidence rule applies to their situation, their claim that GN committed common law fraud must also fail as a matter of law.

The five year prepayment penalty was drafted in accordance with the Alternative Mortgage Transaction Parity Act ("AMTPA"), 12 U.S.C. § 3801 *et seq.*, and therefore, the Illinois Interest Act is inapplicable since it is preempted by AMTPA. See 12 U.S.C. § 3803(c); see also Nat'l Home Equity Mortgage Ass'n v. Face, 239 F.3d 633, 635 (4th Cir. 2001) *cert. denied* 534 U.S. 823 (2001); McCarthy v. Option One Mortgage Corp., No. 01 C 3935, 2001 WL 1826284 (N.D. Ill. Feb. 11, 2001). The five-year prepayment penalty that the Davises signed indicated: "This prepayment penalty is being charged in accordance with the Alternative Mortgage Transaction Parity Act." The Davises also signed a document entitled "Alternative Mortgage Transaction Parity Act Disclosure," which stated that the loan was being made in accordance with AMTPA.

The Davises labor to prove that Defendants are not entitled to the preemption that is afforded by AMTPA, arguing that the requisite disclosures mandated by AMPTA, as implemented through

the regulations issued by the Director of the Office of Thrift Supervision, have not been made. See 12 U.S.C. § 3803(a)(3). Specifically, the Davises contend that they were not given a Consumer Handbook, as required by 12 C.F.R. §§ 226.18 and 226.19. However, GN has proffered a signed form by which the Davises acknowledged that they had received this Consumer Handbook. (See GN Reply Mem. in Supp. of Mot. for Summ. J., Ex. A). Thus, the court finds the Davises' contention without merit.

Therefore, since the five-year prepayment penalty is the only valid contract between the parties, the Davises claim that Defendants violated the Illinois Interest Act must also fail as a matter of law.

### B. Breach of Contract:

In Count II of their complaint, the Davises charge that Countrywide breached the parties' contract by enforcing the five-year prepayment penalty. However, based on the previous analysis, this claim lacks merit. It is undisputed that the Davises signed the five-year prepayment penalty rider, and the court has already determined that this is the only valid contract between the parties. Additionally, as to Countrywide, the Davises fail to establish that it is anything other than a good faith purchaser for value. Therefore, Countrywide was entitled to enforce this valid, legally-binding five year prepayment penalty rider, and the Davises' charge that Countrywide breached their contract must fail as a matter of law.

### C. Illinois Consumer Fraud Act:

In Count III of their complaint, the Davises also charge that GN violated the Illinois Consumer Fraud Act, 815 Ill. Comp. Stat. 505/2, *et seq.*, by causing the Davises to sign inconsistent prepayment penalty riders. This claim requires a separate analysis from the preceding analysis, in

that this statutory cause of action differs slightly from a cause of action for common law fraud.

"The elements of a claim under the Illinois Consumer Fraud Act are: (1) a deceptive act or practice by defendant; (2) defendant's intent that plaintiff rely on the deception; and (3) that the deception occurred in the course of conduct involving trade and commerce." Connick v. Suzuki Motor Co., Ltd., 675 N.E.2d 584, 593 (Ill. 1996) (citation omitted). In contrast to a claim of common law fraud, a "[p]laintiff's reliance is not an element of statutory consumer fraud." Id. (citation omitted). Yet, in addition to the three elements of a Illinois Consumer Fraud Act claim, "a valid claim must show that the consumer fraud proximately caused plaintiff's injury." Id. "Furthermore, a complaint alleging a violation of consumer fraud must be pled with the same particularity and specificity as that required under common law fraud." Id.

The Davises contend that by causing a five-year prepayment penalty rider to be inserted into the Davises' loan documents prior to closing, GN committed a deceptive act. However, as indicated earlier, the Davises present the court with no evidence to support this conclusory allegation. Again, all that the Davises offer is the self-serving affidavit of Thomas Davis, which states:

> We signed all documents presented to us by GN. We were given copies of all documents signed by us, though, with the exception of the HUD-1, all copies were unsigned. We were given copies of both an unsigned two year prepayment penalty rider and an unsigned five year prepayment penalty rider. Therefore, we know we signed both a two year prepayment penalty rider and a five year prepayment penalty rider.

Yet, this statement falls short of affirmatively declaring that the Davises executed a two-year prepayment penalty rider. In fact, elsewhere in this affidavit, Thomas Davis states: "The two sets of documents appeared to be the same, though we did not compare them line by line." In short, this argument boils down to - since we received two different prepayment penalty riders, we must have

13

signed both, and we only intended to sign the two-year prepayment penalty rider. In addition, the Davises' allegation of foulplay occurred at the hands of Bogdanovich and TICOR Title Insurance CO., neither of whom is sued. This does not establish that GN affirmatively engaged in a deceptive practice, or intended for the Davises to rely on that deception. Therefore, since there is nothing in the record to support Thomas Davis' *ipse dixit*, this claim must also fail as a matter of law.

D. **Conclusion:**

In conclusion, the Davises have failed to proffer sufficient evidence to raise a genuine issue of material fact with respect to all of the counts of their second amended complaint. Claims seeking to add to, modify, or contradict a written agreement, such as that brought by the Davises, work mischief with the law of contracts and the attendant stability that the law of contracts brings to a myriad of transactions. Were such claims allowed to proceed, they would do so with a weed-like proliferation. Compare United States v. Israel, No. 02 C 1864, - F.3d -, 2003 WL 194738, at *4 (7th Cir. Jan. 30, 2003) (noting that "[a]ny judicial attempt to carve out a religious exemption [for marjiuana use] would lead to significant administrative problems for the probation office and open the door to a weed-like proliferation of claims for religious exemptions"). This mischief would be especially damaging in a market where the interest rates on mortgages fluctuate, as there would exist an incentive for both mortgagors and mortgagees to avoid their written agreements once the interest rates had fluctuated to what they each subjectively perceive to be a less favorable rate. It is the parol evidence rule that thwarts such mischief and uncertainty. It is the parol evidence rule that protects the bedrock principle of contract law of *pacta sunt servanda*.

## CONCLUSION

For the foregoing reasons, Defendants' motions for summary judgment are granted.

IT IS SO ORDERED

ENTER:

CHARLES R. NORGLE, SR. Judge
United States District Court

DATED: 2-13-03